**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:22-cv-21108-KMM

IRAN CASANAS,

      Plaintiff,

v.

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*,

      Defendant.

_____/

## REPORT AND RECOMMENDATIONS

**THIS CAUSE** is before the Court on Plaintiff Iran Casanas's ("Plaintiff") Motion for Summary Judgment (ECF No. 23), and Defendant Kilolo Kijakazi's, Acting Commissioner of Social Security ("Acting Commissioner" or "Defendant"), Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment (ECF No. 25). Plaintiff filed a Response to Defendant's Motion for Summary Judgment and a Reply to his Motion for Summary Judgment (ECF No. 26). This case was referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, for a Report and Recommendation on any dispositive matters. (ECF No. 2). Having reviewed the Motions, the Responses, and the Reply, the record as a whole, and being otherwise fully advised in the matter, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED, in part**, and Defendant's Motion for Summary Judgment be **DENIED, in part**.

## I.    PROCEDURAL BACKGROUND

This case involves applications for Social Security disability insurance benefits and supplemental security income under the Social Security Act, 42 U.S.C. § 401, *et seq*. (the "Act"). On

September 24, 2018, Plaintiff filed an application under Title II of the Act for Social Security disability insurance benefits and an application under Title XVI of the Act for supplemental security income,[1] claiming that he was unable to work due to depression, daily headaches, anxiety, high blood pressure, and memory problems.[2]  (R. 514).[3]  Plaintiff claimed a disability onset date of November 19, 2017.  (R. 468).

Plaintiff's applications were initially denied on March 25, 2019.  (R. 235–44).  Upon reconsideration, Plaintiff's applications were again denied on July 9, 2019.  (R. 248–63).  Thereafter, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ").  (R. 266).  A hearing took place on February 12, 2020, before ALJ Gracian A. Celaya.  (R. 66–97).

In his decision, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform medium work with exceptions.  The ALJ asked the vocational expert if an individual with the claimant's same age, education, work experience, and residual functional capacity could perform any of the claimant's past relevant work.  (R. 220).  The vocational expert testified that Plaintiff could return to his past work as a flower picker.  (R. 220).  Based on the vocational expert's testimony and in comparing Plaintiff's RFC with the physical and mental demands of this work, the ALJ concluded that Plaintiff could return to his past relevant work as a flower picker.  (R. 220).

In addition, the ALJ, based on the testimony of the vocational expert, found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, based on Plaintiff's age, education, work experience, and RFC.  (R. 220–21).  Accordingly, on March 4, 2020, the ALJ issued a decision finding that Plaintiff was not under a disability from November 19, 2017

---

[1]  *See Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019) (citing *Sims v. Apfel*, 530 U.S. 103, 107, n.2 (2000)) (footnote omitted) ("The regulations that govern [Title II and Title XVI] are, for today's purposes, equivalent.  Likewise, § 405(g) sets the terms of judicial review for each.").

[2]  While Plaintiff mentions additional disabilities alleged in his Motion for Summary Judgment, the disabilities listed above are limited to the disabilities alleged in Plaintiff's application for disability.  (R. 514).

[3]  Citations to the Certified Administrative Record (ECF No. 17) are indicated by "R." followed by the Acting Commissioner's Bates numbering stamp (the bold font numbers located in the bottom right-hand corner of each page).

through the date of that decision, (R. 221–22); a "Notice of Decision – Unfavorable" issued that same day, (R. 202–07).

Plaintiff then sought review from the Appeals Council, which was granted on September 1, 2020. (R. 228–34). The Appeals Council vacated the ALJ's prior decision because the decision "did not properly evaluate the medical opinion from the psychological consultative examiner," Cristian Del Rio, Psy. D. ("Dr. Del Rio"). (R. 230). In the ALJ's decision from March 4, 2020, the ALJ had found that Dr. Del Rio's report had no persuasive value because "he failed to provide a functional limitation assessment." (R. 219). The Appeals Council noted to the contrary that "Dr. Del Rio did provide some level of functional limitations." (R. 230). Dr. Del Rio had opined regarding Plaintiff's functioning in the area of concentration, persistence, and pace: "Sustained concentration is weak (an hour or less). Planning is weak. Organization is weak. Pace is slow. Initiation requires prompting. Task persistence requires prompting. Concentration is weak." (R. 898). The Appeals Council found that if Plaintiff is limited to an hour or less of concentration and requires direction to stay on task that this could be work-preclusive. (R. 230). In finding the ALJ's rationale regarding Dr. Del Rio was inaccurate, the Appeals Council held that further consideration of Dr. Del Rio's opinion was warranted. (R. 230).

Upon remand, the Appeals Council instructed the ALJ to "[g]ive further consideration to the [Plaintiff's] maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations." (R. 230). A second hearing took place telephonically on September 10, 2021, before the ALJ. (R. 15). On September 20, 2021, the ALJ issued a decision again denying Plaintiff's application and finding Plaintiff has not been under disability from November 19, 2017 through the date of the decision. (R. 15–27).

In considering Dr. Del Rio's report as instructed by the Appeals Council, the ALJ found his opinion not persuasive as it was not supported by the record. (R. 24). The ALJ then assessed evidence in the record that the ALJ noted contradicted Dr. Del Rio's report. (R. 24) (citing to evidence of mental status examinations showing normal cognitive functioning, intact memory, intact registration, good fund of knowledge, the ability to perform two-step instructions without difficulties, *etc.*). In his decision, the ALJ similarly found that Plaintiff retained the RFC to perform medium work with exceptions. The ALJ asked the vocational expert if an individual with the claimant's same age, education, work experience, and RFC could perform any of the claimant's past relevant work. (R. 25). The vocational expert testified that Plaintiff could return to his past work as a flower picker. (R. 25–26). Finding the vocational expert persuasive and consistent with the Dictionary of Occupational Titles, the ALJ concluded that Plaintiff is able to perform his past relevant work as a flower picker. (R. 26). In addition, the ALJ, through the testimony of the vocational expert, found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, based on Plaintiff's age, education, work experience, and RFC. (R. 26).

Plaintiff again sought review from the Appeals Council, which subsequently denied his request for review on February 8, 2022. (R. 1–3).

Under 42 U.S.C. § 405(g), Plaintiff has exhausted all forms of administrative review. Accordingly, Plaintiff commenced this action on April 14, 2022, seeking review of the ALJ's decision as a final decision of the Acting Commissioner. (ECF No. 1). Plaintiff and Defendant both filed Motions for Summary Judgment, which are now ripe for review.

## II.  REGULATORY FRAMEWORK

Eligibility for Social Security benefits requires the claimant to prove he is disabled within the meaning of 42 U.S.C. § 423(d)(1)(A). The Act defines a disability as the "inability to engage in any substantial activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Code of Federal Regulations outlines a five-step sequential evaluation process for determining whether a claimant is disabled.  The burden for proving disability rests on the claimant. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  In the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaged in any substantial gainful activity, he will be found not disabled.

In the second step, the ALJ must then determine whether the claimant has a severe impairment or a combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will not be found disabled.  20 C.F.R. § 1520(c).  If the claimant does have a severe impairment or combination of impairments, the ALJ goes on to step three.  *Mabry v. Saul*, No. 4:19-cv-01023-AKK, 2020 WL 4428749, at *2 (N.D. Ala. July 31, 2020).

In the third step, the ALJ must determine whether the impairment meets or equals the severity of a specified impairment in the Listing of Impairments.  20 C.F.R. Pt. 404, Subpt. P. App. 1.

Step four consists of a two-prong analysis, in which the ALJ assesses the following: (1) the claimant's residual functional capacity and (2) the claimant's ability to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  In this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work.  20 C.F.R. §§

1520(a)(4)(iv), 1520(f).  If the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work.  If the claimant can still perform his past relevant work, then he will not be found disabled.  *Id.*

In step five, the burden shifts to the Social Security Administration to show the existence of other jobs in the national economy that the claimant can perform.  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).  If met, the "burden shifts back to the claimant to prove [he] is unable to perform the jobs suggested by the [Social Security Administration]."  *Id.*  The ALJ considers the claimant's RFC, age, education, and work experience in determining whether the claimant is capable of adjusting to other work.  If the claimant can make an adjustment to other work that exists in the national economy, then he is not disabled.  If not, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g).  In determining whether the Acting Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).

### III.   ADMINISTRATIVE FINDINGS

After reviewing the record and conducting two hearings, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.  Following the second hearing in which testimony was taken and evidence presented, the ALJ issued a second written decision.  As part of the analysis, the ALJ conducted the five-step inquiry.

In step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of Plaintiff's claimed disability, on November 19, 2017.  (R. 17).

In step two, the ALJ found that Plaintiff had severe impairments of osteoarthritis of the knees; hypertension; depressive, bipolar, and related disorders; anxiety disorder; post-traumatic stress disorder; disorder of the left shoulder; diabetes; obesity; and headaches.  (R. 17).

In step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."  (R. 18).

In so concluding, the ALJ noted that the record does not establish that Plaintiff has:

> a documented medical need for a walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands; an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements, and a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

(R. 18).

As to Plaintiff's mental impairments, the ALJ found that Plaintiff has a "mild limitation" in understanding, remembering, or applying information; a "moderate limitation" in interacting with others; a "moderate limitation" in concentrating, persisting, or maintaining pace; and a "mild limitation" in adapting or managing oneself.  (R. 18–19).

The ALJ noted that the record does not support that Plaintiff has a "a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life."  (R. 19).  The ALJ additionally noted there was no evidence that shows that changes or increased demands have led to exacerbation in Plaintiff's symptoms and signs or to deterioration in his functioning.  In so concluding, the ALJ remarked that Plaintiff indicated that he can go out alone and that he could manage his finances, shop for personal needs, and drive independently.  (R. 19).

Prior to turning to step four, the ALJ evaluated Plaintiff's RFC and made the following finding:

[Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except he can frequently kneel, crouch, and crawl. He can frequently climb ramps and stairs and occasionally climb ladders, ropes, or scaffolds. He can frequently reach with the left arm. He can never be exposed to extreme heat or cold. He can never be exposed to humidity or vibration. He can follow simple one and two step instructions. He can frequently interact with supervisors, coworkers, and the public. He can concentrate in two hour increments sufficiently to complete an eight-hour workday. (R. 19–20).

In reaching the RFC finding above, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." (R. 20). The ALJ also considered "the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." (R. 20). The ALJ found that, while Plaintiff's "medically determinable impairments could reasonably be expected to produce" the alleged symptoms, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 23).

The ALJ found persuasive the opinion of the State agency medical consultants, who opined that Plaintiff was limited to a range of medium work because the ALJ found these findings were "supported by the objective and clinical findings" of the record. (R. 23).

The ALJ found unpersuasive the opinion of the medical consultative examiner, who opined that Plaintiff has no functional limitation, (R. 903), because the evidence at the hearing showed Plaintiff "is more limited than determined by the consultative examiner." (R. 23).

The ALJ additionally found unpersuasive the opinion of the initial State agency psychological consultants, who opined that Plaintiff was capable of performing all tasks that required limited interaction with the public and in a low stress environment because it was not supported by the record. (R. 23). The ALJ noted that the hearing demonstrated that Plaintiff is more limited than determined by the initial State agency psychological consultants.

The ALJ found persuasive the opinion of the subsequent State agency psychological consultants, who opined Plaintiff was capable of simple tasks with limited social demand as the opinions are supported by the record.

The ALJ found unpersuasive the opinions of the psychological consultative examiners, Dr. Del Rio, and Dr. Alejandro J. Arias, Psy D. ("Dr. Arias"), because their opinions were not supported by the record. (R. 24).

In step four, the ALJ found that Plaintiff is able to perform past relevant work as a flower picker. (R. 25). The ALJ then found that Plaintiff was a "younger individual" on the alleged disability onset date. (R. 26). The ALJ found that Plaintiff has limited education. (R. 26). And the ALJ found that transferability of job skills "is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not the claimant has transferable job skills." (R. 26).

In step five, the ALJ considered Plaintiff's RFC, age, education, and work experience, and found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. 26). These jobs include salvage laborer and machine feeder. (R. 26). These two jobs are unskilled with a specific vocational preparation level of 2 and a medium exertional level. (R. 26). Based on Plaintiff's capability of "making a successful adjustment to other work that exists in significant numbers in the national economy," the ALJ concluded that Plaintiff has not been under a disability, as defined in the Act, from November 19, 2017 to the date of the ALJ's decision. (R. 27).

## IV.   STANDARD OF REVIEW

District courts reviewing an ALJ's denial of a disability claim treat the denial as the Commissioner's final decision. *Walker v. Comm'r of Soc. Sec.*, 987 F.3d 1333, 1338 (11th Cir. 2021). District courts review an ALJ's denial for "whether substantial evidence supports the decision and

whether the correct legal standards were applied." *Id.* (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

Substantial evidence constitutes relevant evidence that a reasonable person would find sufficiently supports the conclusion. *Mitchell v. Comm'r, Social Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Winschel*, 631 F.3d at 1178). The reviewing court must scrutinize the entire record to determine if substantial evidence exists, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), and may not "reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). If substantial evidence supports the Commissioner's decision, the Court "must affirm, even if the proof preponderates against it." *Dyer*, 395 F.3d at 1210 (quoting *Phillips*, 357 F.3d at 1240 n.8).

Reversal is mandated if the Commissioner incorrectly applied the law or insufficiently articulated her legal application, leaving the reviewing court unable to ensure proper legal application. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

## V.   ANALYSIS

Plaintiff argues that the ALJ's decision should be reversed under sentence four of § 405(g) and remanded for an award of benefits based on a finding that he is not disabled.

Alternatively, Plaintiff requests that this case be remanded to the Acting Commissioner with instructions to (1) reassess Plaintiff's mental RFC, (2) reassess Plaintiff's subjective complaints, (3) obtain new vocational witness testimony and pose a complete hypothetical question to the witness, and (4) issue a new decision supported by substantial evidence and proper legal standards.

Plaintiff raises four issues on appeal. First, Plaintiff argues that the ALJ's assessment of Plaintiff's mental RFC is unsupported by substantial evidence. Second, Plaintiff argues that the ALJ

failed to properly evaluate the medical opinions from Dr. Del Rio and Dr. Arias as the ALJ failed to address the required factors.  Third, Plaintiff argues that the ALJ's rationale for discrediting Plaintiff's statements was not supported by substantial evidence.  Fourth, Plaintiff argues that the ALJ's finding that Plaintiff can perform his past relevant work as a flower picker or other work is not supported by substantial evidence.

### A.    Plaintiff's Mental Residual Functional Capacity

Plaintiff argues that the ALJ's mental RFC assessment is not supported by substantial evidence.  Plaintiff asserts that the ALJ's mental RFC assessment is equivalent to a finding that Plaintiff can perform the mental demands of unskilled work and has no mental limitations.  Plaintiff argues that the ALJ's own finding that Plaintiff has a "moderate limitation" in interacting with others is inconsistent with the ALJ's finding in Plaintiff's mental RFC that Plaintiff can frequently interact with supervisors, coworkers, and the public.

Plaintiff argues that the ALJ's mental RFC findings are inconsistent with all of the State agency psychological consultants, including those that the ALJ found persuasive.  In reviewing the medical opinion evidence in the record relevant to Plaintiff's mental RFC, the ALJ reviewed the reports by Dr. Jeannie Nunez, Psy.D. ("Dr. Nunez"), Dr. Brian McIntyre, Ph.D. ("Dr. McIntyre"), Dr. Dorothy Holmes, Ph.D. ("Dr. Holmes"), Dr. Del Rio, and Dr. Arias.  Plaintiff argues that the ALJ's assessment of Plaintiff's mental RFC is inconsistent with the opinions of Dr. Nunez, Dr. McIntyre, and Dr. Holmes.[4]

Defendant argues that the ALJ's finding that Plaintiff is limited to unskilled work is a mental limitation imposed by the ALJ.  Defendant argues that while the medical source opinions are relevant evidence, they are not determinative because the ALJ is charged with determining Plaintiff's RFC. Defendant contends that the ALJ, after considering the record evidence, determined that Plaintiff had

---

[4]  The sufficiency of the ALJ's review of Dr. Del Rio and Dr. Arias's opinions is addressed in detail below.

the RFC to perform a modified range of medium work with nonexertional limitations[5] to account for Plaintiff's mental impairments.  Defendant argues that substantial evidence in the record supports the ALJ's mental RFC finding.

Plaintiff counters that Defendant's argument solely summarizes the ALJ's findings without discussing them in light of the record as a whole.  Plaintiff asserts that Defendant does not address the internal inconsistencies of the ALJ's opinion nor the inconsistency of the ALJ's finding with the medical opinions in the record, including those the ALJ found persuasive.

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)).  Along with age, education, and work experience, the claimant's residual functional capacity is considered in determining whether the claimant can work.  *Id.* (citing 20 C.F.R. § 404.1520(f)).  "[T]he task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors" and "[t]he ALJ makes this determination by considering the claimant's ability to 'meet the physical, mental, sensory, and other requirements of work.'"  *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (quoting 20 C.F.R. § 416.945(a)(4)).

"In reviewing the ALJ's decision, a court is not to reweigh the evidence or decide the facts anew."  *Lombana v. Saul*, No. 1:19-cv-23873-KMM, 2020 WL 5633684, at *5 (S.D. Fla. Aug. 20, 2020) (citing *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)) (internal quotation marks omitted).  While the Court must not reweigh the evidence, the decision must be supported by substantial evidence such that a reasonable person would accept it as adequate to support

---

[5] Limitations or restrictions which affect a claimant's ability to meet the demands of jobs, other than strength demands are considered nonexertional limitations.  20 C.F.R. § 416.969a(a).  Examples of nonexertional limitations includes difficulty functioning due to nervousness, anxiety, or depression or difficulty performing manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, and crouching.  *See id.* at § 416.969a(c)(vi).

the ALJ's conclusion. *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla—the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

### 1.   The ALJ's Finding Regarding Plaintiff's Interaction with Supervisors, Coworkers, and the Public

Plaintiff asserts that the ALJ's own finding that Plaintiff has a "moderate limitation" in interacting with others is inconsistent with the ALJ's finding in Plaintiff's mental RFC that Plaintiff can frequently interact with supervisors, coworkers, and the public. (R. 18, 20). Defendant argues that substantial evidence in the record supports the ALJ's mental RFC finding. Defendant additionally argues that the ALJ's findings are consistent because the ALJ limited Plaintiff's interaction with others to frequent, rather than constant interaction.

While the Court must not reweigh the evidence, the decision must be supported by substantial evidence such that a reasonable person would accept it as adequate to support the ALJ's conclusion. *Crawford*, 363 F.3d at 1158.

At steps two and three, the ALJ found that Defendant had a moderate limitation in interacting with others. (R. 18). A claimant has a moderate limitation if "functioning in [the] area independently, appropriately, effectively, and on a sustained basis is fair." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2)(c). In so concluding, the ALJ noted that Plaintiff reported that he attends church regularly and that he reported no problems getting along with family, friends, neighbors, or others.[6] (R. 18). The ALJ further noted that the record reflected that Plaintiff was described as cooperative, good at

---

[6]  The Court independently notes that the ALJ relies heavily on a report completed by Plaintiff in English, even though Plaintiff is noted as only being able to speak Spanish in the record. *See* (R. 538, 689, 897, 979). Indeed, Plaintiff testified at both hearings in Spanish with aid of an interpreter. (R. 36, 68).

maintaining eye contact, communicated with normal speech, demonstrated adequate social skills, and related normally.  The ALJ later held that Plaintiff has the RFC to perform medium work with the nonexertional limitation that he can "frequently interact with supervisors, coworkers, and the public." (R. 20).

Even when a claimant's mental impairments are considered non-severe, "the ALJ [is] still required to consider them when assessing the claimant's RFC."  *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1064 (11th Cir. 2021).  The ALJ's finding that Plaintiff has a moderate limitation in interacting with others apparently contradicts the ALJ's finding in Plaintiff's RFC that Plaintiff can frequently interact with supervisors, coworkers, and the public.  While the ALJ may have properly considered Plaintiff's moderate limitation in interacting with others in finding Plaintiff can frequently interact with supervisors, coworkers, and the public, the ALJ does not adequately explain his reasoning to demonstrate that this contradiction is supported by substantial evidence.  "The ALJ has an obligation to explain his decision in a way that permits meaningful judicial review.  While an ALJ need not exhaustively discuss every piece of evidence in the record, he must build a logical bridge from the evidence to his findings."  *Rasheeda Monique G. v. Comm'r, Soc. Sec. Admin.*, No. 1:21-CV-00551-CMS, 2022 WL 16709725, at *5–6 (N.D. Ga. June 21, 2022) ("While this evidence arguably supports the ALJ's finding that Plaintiff is markedly limited in her ability to interact with others (at step three of his analysis), the undersigned agrees with the Plaintiff that the ALJ failed to articulate, explain or build an evidentiary bridge to what, if any, evidence supports his RFC finding that Plaintiff is capable of performing full-time competitive employment that involves interactions with supervisors, coworkers, and the public on an occasional basis, which the Agency defines as 'from very little up to one-third [of the workday].'").  Without further explanation from the ALJ regarding this finding, the undersigned is unable to conduct a meaningful judicial review of his RFC

assessment.  Because the ALJ did not provide adequate explanation to build a logical bridge, the ALJ's assessment of the RFC is not supported by substantial evidence.

Accordingly, remand is warranted to assess the impact of Plaintiff's mental impairment of moderate limitation in the ALJ's assessment of Plaintiff's mental RFC.

### 2.       The RFC Assessment and the Medical Opinions in the Record

Plaintiff argues that the ALJ's mental RFC assessment is inconsistent with his findings on the medical opinions of Dr. Nunez, Dr. McIntyre, and Dr. Holmes.  Because reevaluation of Plaintiff's mental impairment of moderate limitation may affect the ALJ's RFC assessment, this issue is dispositive, and the Court need not address Plaintiff's argument that the ALJ's RFC assessment is inconsistent with the medical opinions in the record.  However, the Court notes that the ALJ upon remand must articulate the evidence upon which he relied in rendering Plaintiff's mental RFC.

For example, the ALJ found that Dr. Nunez's opinion was not persuasive because Plaintiff is *more* limited than Dr. Nunez's determination yet assessed Plaintiff's RFC to be *less* limited than Dr. Nunez did.  The ALJ found in full as follows:

> The initial State agency psychological consultant opined the claimant was capable of performing all tasks that required limited interaction with public and were performed in a low stress environment (Exhibits 1A; 2A).  I find this opinion unpersuasive because it is not supported [by] the record.  Evidence received at the hearing level shows *the claimant is more limited than determined by the consultants*.  As such, I have incorporated reasonable exertional and nonexertional limitations in the herein assessed residual functional capacity that are consistent with the evidence of record and the claimant's allegations of disability.

(R. 23) (emphasis added).

Dr. Nunez opined that Plaintiff had a mild limitation in understanding, remembering, or applying information and a mild limitation in his ability to concentrate, persist, or maintain pace.  (R. 103, 116).  Dr. Nunez further opined that Plaintiff had a moderate limitation in interacting with others and in adapting or managing himself.  (R. 103, 116).  Dr. Nunez noted that Plaintiff "would work best in a low stress environment."  (R. 103).  Dr. Nunez further explained that she believed Plaintiff would

likely have moderate difficulties interacting with the general public, Plaintiff should be able to ask simple questions, and Plaintiff might have moderate difficulties accepting instructions from supervisors and getting along with coworkers.  (R. 107, 120).

Dr. Nunez opined that Plaintiff had a moderate limitation in interacting with others and in adapting or managing himself.  Yet, the ALJ assessed Plaintiff's RFC to include frequent interaction with supervisors, coworkers, and the public.  Dr. Nunez opined that Plaintiff has moderate difficulties accepting instructions from supervisors and getting along with coworkers.  And the ALJ assessed that Plaintiff can follow simple one- and two-step instructions.  While the ALJ found the "[e]vidence received at the hearing level shows the claimant is more limited than determined by" Dr. Nunez, the ALJ assessed Plaintiff's RFC to be less limited than Dr. Nunez's opinion.  An "ALJ's conclusion need not 'perfectly correspond with any of the opinions of medical sources cited in his decision,' because the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole.'"  *William M. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1665-DB, 2021 WL 3077885, at *4 (W.D.N.Y. July 21, 2021) (alterations omitted); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) (citing 20 C.F.R. § 416.945(a)(4)) ("[T]he task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors.").  However, an ALJ "must build a logical bridge from the evidence to his findings." *Rasheeda Monique G.*, 2022 WL 16709725, at *6.  With the ALJ's assessment of Dr. Nunez's opinion, it is hard to reconcile how the ALJ considered Dr. Nunez as not limiting Plaintiff enough, but then assessing Plaintiff's RFC to be less limited than Dr. Nunez.  While the Court may not reweigh the evidence, the ALJ must sufficiently explain his RFC assessment for the Court to be able to conduct meaningful judicial review.

Accordingly, upon remand, the ALJ shall sufficiently articulate his findings so that the Court is able to follow the ALJ's logical bridge from the evidence to his assessment of Plaintiff's RFC.

### B.        Consideration of Certain Medical Opinions

Plaintiff argues that the ALJ failed to properly evaluate the medical opinions of Dr. Del Rio and Dr. Arias, which failure warrants remand. Defendant argues that the ALJ properly evaluated Dr. Del Rio's and Dr. Arias's medical opinions by addressing both supportability and consistency under the operative regulations.

### 1.        Medical Opinion of Dr. Del Rio

Plaintiff argues that Dr. Del Rio's findings are supported by his own findings as Dr. Del Rio reviewed Plaintiff's history and conducted a medical status examination of Plaintiff. Plaintiff argues in addressing whether Dr. Del Rio's opinion was consistent with the record that the ALJ "cherry picked" findings and failed to consider the record as a whole. Plaintiff further argues that the record as a whole supports Dr. Del Rio's opinion.

In 2017, the Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017, including Plaintiff's claim at issue here. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The revised regulations provide that the SSA will consider medical opinions or prior administrative medical findings using certain factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The factors are (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as familiarity with the other evidence in the claim or an understanding of the program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). The most important of these factors are supportability and consistency. 20 C.F.R. § 404.1520c(a). As such, the ALJ must explain how he considered these two factors when determining the persuasiveness of a medical source's medical opinion. *Id.* The ALJ may, but is not required to, also explain how he considered the remaining factors. *Id.*

For supportability, the rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1); 416.920c(c)(1). For consistency, the rules provide: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520(c)(2), 416.920c(c)(2). "Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records, and (2) consistent with the other evidence of record." *Mercado v. Comm'r of Soc. Sec.*, No. 6:22-CV-287-DCI, 2023 WL 145154, at *4 (M.D. Fla. Jan. 10, 2023) (quoting *Tocco v. Comm'r of Soc. Sec.*, No. 8:21-cv-399-TPB-SPF, 2022 WL 3362863, (M.D. Fla. July 28, 2022)).

Dr. Del Rio explains in his report that he based his opinion on information provided by the Plaintiff and on his direct observations during his interview with Plaintiff. (R. 897). Dr. Del Rio notes that Plaintiff drove to the examiner's office and was unaccompanied during the evaluation. Dr. Del Rio opined that Plaintiff's grooming and personal hygiene were fair. Dr. Del Rio opined that Plaintiff was cooperative and his eye contact was good. Dr. Del Rio noted that Plaintiff required repetition, but was oriented and alert. Dr. Del Rio opined that Plaintiff was tearful, fidgety, wringing his hands with symptoms of anhedonia during the session. Dr. Del Rio opined that Plaintiff's frustration tolerance, impulse control, and task persistence were fair. Dr. Del Rio noted that Plaintiff denied suicidal or homicidal ideation, intent, or plans. Dr. Del Rio opined with respect to Plaintiff's concentration, persistence, and pace: "Sustained concentration is weak (an hour or less). Planning is weak. Organization is weak. Pace is slow. Initiation requires prompting. Task persistence requires prompting. Concentration is weak." (R. 898).

18

In assessing Dr. Del Rio's opinion,[7] the ALJ wrote in full as follows:

> The psychological consultative examiner provided the following opinion: "Sustained concentration is weak (an hour or less). Planning is weak. Organization is weak. Pace is slow. Initiation requires prompting. Task persistence requires prompting. Concentration is weak." (Exhibit 13F at 3). Similarly, Dr. Arias opined the claimant had marked deficits in almost every vocationally relevant domain assessed (Exhibit 23F at 5-6). I find these opinions not persuasive because they are not supported the record. Rather, mental status examinations showed normal cognitive functioning (Exhibit 21F at 18) and intact memory (Exhibit 5F at 3, 9; Exhibit 6F at 1; Exhibit 9F at 1; Exhibit 16F at 1-2; Exhibit 19F at 24; Exhibit 22F at 4-5, 7-8). The claimant exhibited intact registration, good fund of knowledge, and fair delayed recall (Exhibit 13F at 2) and was able to perform two step instructions without difficulties (Exhibit 14F at 3). His immediate recall was unimpaired (Exhibit 23F at 3). His thought process remained intact (Exhibit 3F at 6; Exhibit 5F at 3, 9; Exhibit 6F at 1; Exhibit 9F at 1; Exhibit 16F at 1-2; Exhibit 19F at 24; Exhibit 22F at 4-5, 7-8). Treatment notes document normal concentration and psychomotor activity (Exhibit 5F at 3, 9; Exhibit 6F at 1; Exhibit 9F at 1; Exhibit 16F at 1-2; Exhibit 19F at 24; Exhibit 22F at 4-5, 7-8). The claimant exhibited fair task persistence (Exhibit 13F at 2). He demonstrated adequate social skills (Exhibit 13F at 2) and related normally (Exhibit 14F at 3). He also demonstrated adequate insight and judgment (Exhibit 3F at 6; Exhibit 5F at 3, 9; Exhibit 6F at 1; Exhibit 9F at 1; Exhibit 16F at 1-2; Exhibit 19F at 24; Exhibit 22F at 4-5, 7-8) and fair impulse control and frustration tolerance (Exhibit 13F at 2). Moreover, I note that Dr. Arias' opinion is inconsistent with his own testing, which revealed only mild to moderate symptoms (Exhibit 23F at 4), and that the opinion was based on a one time visit with a doctor retained by the claimant specifically for an assessment in connection with this claim.

(R. 24).

With regard to supportability, the ALJ expressly assessed the inconsistencies the ALJ found in Dr. Del Rio's opinion within the context of Dr. Del Rio's own report. The ALJ noted that Dr. Del Rio's opinion regarding Plaintiff's concentration, persistence, and pace is contradicted by Dr. Del Rio's opinion that Plaintiff exhibited intact registration, good fund of knowledge, and fair delayed recall. The ALJ further noted that Dr. Del Rio's opinion on Plaintiff's concentration, persistence, and pace was contradicted by Dr. Del Rio's own finding that Plaintiff had fair task persistence, demonstrated adequate social skills, and had fair impulse control and frustration tolerance. That

---

[7] The ALJ also considered Dr. Arias's opinion in this evaluation. The ALJ's assessment of Dr. Arias's opinion is addressed in detail below.

Plaintiff can point to evidence in Dr. Del Rio's report that support Dr. Del Rio's opinion does not compel a finding that the ALJ failed to properly assess the supportability factor with respect to Dr. Del Rio's opinion.  Under the regulations, the ALJ is tasked with explaining how he considered supportability when determining the persuasiveness of Dr. Del Rio's opinion and the ALJ did so sufficiently here.

As to consistency, the ALJ found Dr. Del Rio's opinion not persuasive because it was "not supported by the record."  The ALJ went on to note that contrary to Dr. Del Rio's opinion that Plaintiff's task persistence requires prompting that Plaintiff is noted in the record for being able to perform two step instructions without difficulties.  (R. 902).  The ALJ found the record also demonstrates that Plaintiff's immediate recall was unimpaired, (R. 1079), and his thought process remained intact.  (R. 620, 691, 697, 723, 858, 909, 979, 1045, 1049).  The ALJ notes that Plaintiff is also shown in the record as having normal cognitive function.  (R. 18).  Contrary to Dr. Del Rio's opinion that Plaintiff's concentration is weak, the ALJ noted that Plaintiff's treatment documents normal concentration and psychomotor activity.  (R. 691, 697, 723, 909, 979, 1045, 1046, 1048, 1049).  Accordingly, in detailing the evidence from the record that contradicted Dr. Del Rio's opinion, the ALJ properly considered the consistency of Dr. Del Rio's opinion in light of the record as a whole and sufficiently explained his findings.

"Plaintiff's argument that the ALJ 'cherry-picked' evidence from the record to negate [Dr. Del Rio's] opinions is off the mark.  This court may not reweigh the facts or reexamine the evidence." *Poke v. Kijakazi*, No. 7:22-CV-00660-RDP, 2023 WL 3012560, at *8 (N.D. Ala. Apr. 19, 2023). "Instead, this court's role is limited to addressing whether the ALJ applied proper legal standards in evaluating" Dr. Del Rio's opinions.  *See id.*  Plaintiff in offering other evidence in the record supporting Dr. Del Rio's opinion is attempting to task this Court with reweighing the evidence, which is not within its purview.

Accordingly, the ALJ did not err in assessing Dr. Del Rio's opinion as the ALJ properly assessed both the supportability and consistency factors.

### 2.        Medical Opinion of Dr. Arias

Plaintiff argues that the ALJ failed to properly evaluate Dr. Arias's opinion in failing to consider the consistency of Dr. Arias's opinion with the record.  Plaintiff additionally argues that the ALJ improperly rejected Dr. Arias's opinion because his evaluation was solicited by Plaintiff. Defendant argues that the ALJ properly considered Dr. Arias's opinion.

Dr. Arias performed a psychological evaluation on Plaintiff on August 16, 2021.  Dr. Arias noted that Plaintiff's gait, posture, and hygiene were normal.  (R. 1077).  Dr. Arias reported that Plaintiff was cooperative and motivated during the evaluation, while displaying a good degree of eye contact.  (R. 1078).  Dr. Arias noted that Plaintiff's language skills were substantive and grammatical with no expressive or receptive difficulties reported or observed.  Dr. Arias reported Plaintiff's mood to be euthymic and at times depressed, but stated Plaintiff firmly denied any suicidal ideations, plans, or intent.  Dr. Arias found Plaintiff oriented to time, person, and place.  At the evaluation, Plaintiff recited three numbers forward and two numbers backward.  Plaintiff was also able to recall three out of three words upon immediate recall.  Dr. Arias reported that Plaintiff lost count when performing serial subtractions.  Dr. Arias found that Plaintiff had "moderate symptoms of depression" on the Beck Anxiety Inventory and "mild symptoms of depression" on the Beck Depression Inventory.  (R. 1080).  Dr. Arias reported that his diagnostic impression of Plaintiff was that he had Unspecified Bipolar Disorder with intermittent visual hallucinations.  Dr. Arias opined that Plaintiff would require supervision in managing personal funds.

Dr. Arias executed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) and opined that Plaintiff had marked limitations in carrying out simple instructions, the ability to make judgments on simple work-related decisions, understand and remember complex

instructions, carry out complex instructions, interact appropriately with supervisor(s), interact appropriately with co-workers, and respond appropriately to usual work situations and to changes in a routine work setting.  (R. 1081–82).  Dr. Arias found Plaintiff had extreme limitations in the ability to make judgements on complex work-related decisions.  (R. 1081).  Dr. Arias opined that Plaintiff had a mild limitation in the ability to understand and remember simple instructions and a moderate limitation in interacting appropriately with the public.  (R. 1081–82).

The ALJ evaluated Dr. Arias's opinion in tandem with Dr. Del Rio's.  The ALJ noted that Dr Arias "opined the claimant had marked deficits in almost every vocationally relevant domain assessed."  (R. 24).  The ALJ found Dr. Arias's opinion along with Dr. Del Rio's opinion as "not persuasive because they are not supported [by] the record."  (R. 24).

In assessing supportability of Dr. Arias's records, the ALJ found that Dr. Arias's opinion "is inconsistent with his own testing, which revealed only mild to moderate symptoms [(R. 1080)], and that the opinion was based on a one time visit with a doctor retained by the claimant specifically for an assessment in connection with this claim."  (R. 24).

Plaintiff argues that the ALJ improperly limited his review of supporting medical records to the results of the Beck Depression and Anxiety Inventories.  Plaintiff argues that Dr. Arias's opinion in finding Plaintiff had marked limitations was based on more than the Beck Depression and Anxiety Inventories as Dr. Arias also relied on his review of the record and the clinical interview.

Whether additional records would support Dr. Arias's opinion or not, the ALJ's observation that Dr. Arias's own opinion were not supported by the medical record is sound.  Dr. Arias reported that Plaintiff had moderate symptoms of depression on the Beck Anxiety Inventory and mild symptoms of depression on the Beck Depression Inventory.  This does not support Dr. Arias's related opinion that "the claimant had marked deficits in almost every vocationally relevant domain assessed," as the ALJ noted.  (R. 24).  A claimant has a marked limitation if "functioning in [the] area

independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2)(d).   Dr. Arias's test results that Plaintiff only had mild and moderate symptoms of depression do not support Dr. Arias's later finding that Plaintiff's functioning in most of the vocationally relevant domains assessed is seriously limited.   Accordingly, the ALJ's finding that Dr. Arias's opinion was not supportable is supported by substantial evidence and the ALJ did not err in so concluding.

Plaintiff additionally argues that the fact that Dr. Arias's opinion was solicited by Plaintiff is not a proper basis to reject an opinion.   The factors for an ALJ to consider medical opinions include (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors, such as familiarity with the other evidence in the claim or an understanding of the program's policies and evidentiary requirements.   20 C.F.R. § 404.1520c(c).   The ALJ noted that Dr. Arias's opinion "was based on a one time visit with a doctor retained by the claimant specifically for an assessment in connection with this claim." (R. 24).   The regulations specifically provide that the ALJ can consider the relationship with the claimant in assessing a medical opinion.   Accordingly, the ALJ did not err in considering the relationship between Dr. Arias and Plaintiff in assessing Dr. Arias's medical opinion.

In assessing the consistency of Dr. Arias's records, the ALJ reviewed the evidence in the record that is inconsistent with Dr. Arias's findings.   The ALJ noted that, as mentioned above, that Plaintiff showed normal cognitive function, intact memory, intact registration, good fund of knowledge, fair delayed recall, the ability to perform two-step instructions without difficulties, intact thought process, normal concentration, normal psychomotor activity, fair task persistence, adequate social skills, related normally, adequate insight, and adequate judgment. (R. 620, 691, 697, 723, 858, 897, 902, 909, 910, 979–80, 1045, 1046, 1049, 1079).   In addition, in Plaintiff's evaluation with Dr. Del Rio, Plaintiff exhibited intact registration, good fund of knowledge, and fair delayed recall. (R.

897).  Dr. Del Rio additionally found Plaintiff to be oriented and alert with no delusions evident.  Dr. Del Rio opined his task persistence and impulse control were fair.  Plaintiff additionally denied to Dr. Del Rio any present or suicidal or homicidal ideation, intent, or plans.  Dr. Del Rio additionally noted Plaintiff related normally.  Plaintiff's treatment notes further document normal concentration and psychomotor activity.  (R. 691, 697, 723, 909, 979, 1045, 1046, 1048, 1049).  This evidence was sufficient evidence for the ALJ to conclude that Dr. Arias's opinion regarding Plaintiff's marked limitations was not consistent with other evidence in the record.  Thus, the ALJ's analysis of the consistency of Dr. Arias's medical opinion was sufficient.

Even if the evidence might preponderate in the other direction, this Court must still affirm the decision where there is substantial evidence to support the Acting Commissioner's decision.  *Dyer*, 395 F.3d at 1210.  And here, the Court finds that there is substantial evidence in the record to support the ALJ's finding that Dr. Arias's opinion is unpersuasive.

### C.    Discrediting Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ's reasons for not crediting Plaintiff's testimony are not supported by substantial evidence.  First, Plaintiff argues that the ALJ erred in determining that Plaintiff has not undergone aggressive treatment as this finding is contradicted by the record.  Second, Plaintiff argues that the ALJ's findings are insufficient as matter of law with respect to Plaintiff's statements regarding limitations to his daily activities.

To establish a disability through a claimant's own testimony of pain or other subjective symptoms, a claimant must show:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Franqui v. Comm'r of Soc. Sec.*, No. 18-11975, 2019 WL 2173780, at *2 (11th Cir. Jan. 10, 2019).  This standard applies to both complaints

regarding subjective pain and complaints regarding other subjective conditions. *Holt*, 921 F.2d at 1223.

The ALJ may reject testimony about subjective complaints, but that rejection must be based on substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). Moreover, "[i]f a claimant testifies as to his subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1561–62). If such reasons are not given, then the claimant's subjective pain testimony must be accepted as true. *Foote*, 67 F.3d at 1562 (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)). "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable . . . this Court to conclude that the ALJ considered [the] medical condition as a whole." *Carman v. Astrue*, 352 F. App'x 406, 408 (11th Cir. 2009) (quoting *Dyer*, 395 F.3d at 1210).

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." *Talbot v. Comm'r of Soc. Sec.*, 383 F. App'x 843, 845 (11th Cir. 2010); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 752 (11th Cir. 2021).

### 1.    Aggressive Treatment

As to Plaintiff's statements regarding his treatment, the ALJ wrote:

> The intensity, persistence, and limiting effects of the claimant's symptoms have been considered under the process set forth in the regulations (SSR 16-3p). The record documents evidence underlying the claimant's impairments that could be expected to produce the claimant's reported symptoms. However, the overall evidence does not support the level of symptom intensity, persistence, and functionally limiting effect alleged by the claimant. Towards that end, I note the claimant has not received the type of treatment one would expect from a totally disabled individual. Specifically, the lack of aggressive treatment, such as surgical intervention or psychiatric admission

after December 2017, suggests the claimant's symptoms and limitations were not as severe as alleged.  Moreover, the treatment notes show the claimant reported that he was feeling pretty well (Exhibit 9F at 1) and good (Exhibit 16F at 1).  The psychiatrist indicated the claimant was stable (Exhibit 6F at 1).  The claimant also reported that he had improved energy and concentration (Exhibit 22F at 1) and that he was working with son's business making honey (Exhibit 6F at 1).

(R. 24–25).

Plaintiff argues that the ALJ improperly discredits Plaintiff's testimony based on the ALJ's finding that Plaintiff did not undergo aggressive treatment.  In relevant part, the ALJ in assessing the intensity, persistence, and limiting effects of the Plaintiff's symptoms found that Plaintiff "ha[d] not received the type of treatment one would expect from a totally disabled individual," such as a lack of aggressive treatment including any "psychiatric admission after December 2017."  Plaintiff argues in this assessment the ALJ fails to consider Plaintiff's two prior psychiatric admissions and Plaintiff's outpatient treatment, which includes prescriptions of psychotropic medications.

Plaintiff was admitted in January 2016 and December 2017 for suicidal ideations, but has not been admitted since.  The ALJ acknowledges Plaintiff's prior admissions in stating that Plaintiff did not undergo aggressive treatment "after December 2017."  As such, the ALJ did not err by failing to consider Plaintiff's prior psychiatric admissions.

Regarding Plaintiff's prescriptions of psychotropic medications, the record reveals several prescriptions for psychotropic medications and follow-ups for medication management.  In January 2018, Plaintiff's diagnosis included "major depressive disorder, recurrent, severe with psychotic symptoms," and Plaintiff was continued on Risperdal and Zoloft.  (R. 691–92).  In April 2018, after reporting that Plaintiff has "continued with depression and trouble sleeping," Plaintiff's prescription of Risperdal was continued, his prescription of Zoloft was increased, and he was started on Trazodone.  (R. 726–27).  In November 2018, Plaintiff was seen for a follow-up on medication management, Plaintiff was continued on Risperdal, Zoloft, and Trazodone.  (R. 859).  In April 2019, Plaintiff reported that he "has been hearing voices sometimes," and his prescription for Risperdal was

increased and he was continued on Zoloft and Trazodone.  (R. 909–10).  In August 2019, Plaintiff was seen for medication management and reported that "the voices are constantly occurring" and "telling him to hurt himself."  (R. 979).  Plaintiff was taken off Trazodone and Risperdal, placed on Zyprexa, and continued on Zoloft.  (R. 980).

The ALJ however does not mention Plaintiff's prescriptions of psychotropic medications.  The ALJ broadly rejects any treatment Plaintiff is currently undergoing beyond Plaintiff's psychiatric admissions, without enough for this Court to conclude that the ALJ considered Plaintiff's mental condition as a whole.  As Plaintiff notes, "[a] growing number of district courts have held that in cases where claimants consume antidepressant, anticonvulsant, and/or antipsychotic drugs, consistently attend visits with mental health professions, and endure constant medication adjustment and management, their treatment is classified as anything but 'routine and conservative.'"  *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 363 (4th Cir. 2023).[8]  The ALJ is required to consider and clearly articulate explicit and adequate reasons why Plaintiff's treatment is not of the kind one would expect of a person under a disability.  *See Dyer*, 395 F.3d at 1210 ("If a claimant testifies as to his subjective complaints of disabling pain and other symptoms, as [the plaintiff] did here, the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms.").  Without considering Plaintiff's current treatments including prescriptions of psychotropic medications, the ALJ's assessment of this factor is not supported by substantial evidence.

Moreover, the ALJ's analysis on the treatment factor is incomplete.  In assessing a "lack of aggressive treatment," the ALJ was then required to "consider[] possible reasons [Plaintiff] may not

---

[8]  *See Za Xiong Moua v. Saul*, No. 1:19-CV-00516-SKO, 2020 WL 5257592, at *8 (E.D. Cal. Sept. 3, 2020); *James N. v. Saul*, No. ED CV 18-1199-KS, 2019 WL 3500332, at *6 (C.D. Cal. July 31, 2019); *Wilson v. Colvin*, No. 815CV04185MGLJDA, 2016 WL 6471904, at *15 (D.S.C. Oct. 19, 2016), *report and recommendation adopted*, No. CV 8:15-4185-MGL, 2016 WL 6433500 (D.S.C. Oct. 31, 2016); *Mason v. Colvin*, No. 1:12-CV-00584 GSA, 2013 WL 5278932, at *6 (E.D. Cal. Sept. 18, 2013).

. . . seek treatment consistent with the degree of [Plaintiff's] complaints."  Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017), 2017 WL 5180304.  However, the ALJ did not do so here.

### 2.    Daily Activities

Plaintiff argues that the ALJ's findings regarding Plaintiff's statements of his daily activities are insufficient as matter of law as there is no requirement for daily activities to be verified and the ALJ's conclusions are too vague to evaluate.

The ALJ found in relevant part:

> Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled.  First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty.  Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision.  Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

(R. 25).

First, as Plaintiff notes, there is "no requirement that a claimant's daily activities (or lack thereof) be objectively verified." *Wolfe v. Comm'r of Soc. Sec.*, No. 6:11-CV-1316-ORL-DAB, 2012 WL 3264916, at *6 (M.D. Fla. Aug. 10, 2012); *Grier v. Colvin*, 117 F. Supp. 3d 1335, 1353 (N.D. Ala. 2015) ("Seemingly, the ALJ would never credit a claimant's testimony about limited daily activities, unless the claimant allows some third-party to observe her daily activities for some period of time.").

Second, the court in *Wolfe* found the ALJ's assessment of a claimant's daily activities "too vague to evaluate" as the ALJ wrote, similarly in this case, that "even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and

other factors discussed in this decision." *Wolfe*, 2012 WL 3264916, at *6. "[T]he ALJ's statement that 'it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reason' seemingly implies that the ALJ believes [Plaintiff] has chosen to live [his] limited lifestyle. While the ALJ's theory may be correct, he did not point to adequate evidence to back up this conclusion." *Grier*, 117 F. Supp. 3d at 1353. Like the courts in *Wolfe* and *Grier*, this Court finds the ALJ's assessment of Plaintiff's daily activities too vague to evaluate, and thus warrants remand for reassessment of Plaintiff's subjective symptoms.

Accordingly, the Court finds that the ALJ erred when assessing the intensity, persistence, and limiting effects of Plaintiff's symptoms, as the ALJ discredited Plaintiff's claims of subjective symptoms and impairments based on improper evaluation of Plaintiff's statements regarding his daily activities. Therefore, remand is warranted for reassessment of Plaintiff's subjective symptoms.

**D.    Past Relevant Work as a Flower Picker**

Finally, Plaintiff challenges the ALJ's conclusion that Plaintiff is capable of his past relevant work as a flower picker and, alternatively, that Plaintiff could perform medium unskilled work in representative occupations as a salvage laborer and machine tender. Plaintiff asserts that the ALJ's hypothetical question upon which the vocational expert relied tracked the RFC assessment. Plaintiff argues that as the RFC assessment is not supported by substantial evidence, neither is the testimony of the vocational expert.

As this Court found previously that the ALJ's RFC assessment was not supported by substantial evidence and the hypothetical posed to the vocational expert tracked Plaintiff's current RFC, the testimony of the vocational expert is similarly not supported by substantial evidence. The Court finds that in assessing Plaintiff's RFC as detailed above, the ALJ must also accordingly track the RFC findings with the hypothetical question posed to the vocational expert. *See Cook v. Astrue*, No. 3:11-CV-696-J-TEM, 2012 WL 4356261, at *8 (M.D. Fla. Sept. 24, 2012) (citing *Pendley v.*

*Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985)) ("It is well established in the Eleventh Circuit that when a vocational expert is utilized at the fifth step in the sequential evaluation process, the hypothetical questions posed must include all impairments of the particular claimant/plaintiff.").

Plaintiff additionally argues that the ALJ failed to properly consider the episodic nature of bipolar disorder, which is one of the severe impairments found by the ALJ. Plaintiff cites to *Samuels v. Acting Commissioner of Social Security* in support of this contention. 959 F.3d 1042 (11th Cir. 2020).

In *Samuels*, the Eleventh Circuit found that the ALJ failed to properly consider the episodic nature of bipolar disorder in the hypothetical provided to the vocational expert. In *Samuels*, like in this case, the ALJ found that the plaintiff's bipolar disorder was a severe impairment at step two. The court found the ALJ erred in not accounting for "unexcused absences or time spent off-task, which were limitations caused by [plaintiff's] bipolar disorder that were reflected in the record." *Id.* at 1047.

In our case, however, Plaintiff does not similarly provide instances reflected in the record that demonstrate the episodic nature of Plaintiff's bipolar disorder that the ALJ failed to consider in positing the hypothetical to the vocational expert. *See Marshall v. Kijakazi*, No. 1:20-CV-51-JTA, 2021 WL 4494622, at *6 (M.D. Ala. Sept. 30, 2021) ("[Plaintiff] does not cite to any portion of the record which supports her contention that she was restricted in terms of attending work due to her bipolar disorder."). The record shows that the ALJ considered the limitations that Plaintiff's impairments from bipolar disorder may cause, but ultimately the ALJ did not find all of the limitations supported by the record and thus did not include them in the hypothetical to the vocational expert.

## VI.   RECOMMENDATIONS

Accordingly, the undersigned respectfully **RECOMMENDS** that Plaintiff Iran Casanas's Motion for Summary Judgment (ECF No. 23) be **GRANTED, in part**, and Defendant Kilolo

Kijakazi's, Acting Commissioner of Social Security, Motion for Summary Judgment with Supporting Memorandum of Law (ECF No. 25) be **DENIED, in part**.

The undersigned further **RECOMMENDS** that the September 20, 2021 decision of the ALJ be **REVERSED** and this matter be **REMANDED** to the Acting Commissioner, under sentence four of 42 U.S.C. § 405(g), to (1) specify and explain any functional limitations arising from Plaintiff's moderate limitations in interacting with others and consider such limitation in determining Plaintiff's RFC, (2) reassess Plaintiff's subjective complaints consistent with this Order, and (3) include all Plaintiff's impairments in the hypothetical questions posed to the vocational expert upon reassessing Plaintiff's RFC.

A party shall serve and file written objections, if any, to this Report and Recommendations with the Honorable K. Michael Moore, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendations.  Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida, this 3rd day of August, 2023.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE